**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE CHARLES SCHWAB
CORPORATION AND INCLUDABLE
SUBSIDIARIES,
        *Petitioner-Appellant,*

        v.

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellee.*

No. 05-72899

Tax Ct. No.
18095-98

THE CHARLES SCHWAB
CORPORATION AND INCLUDABLE
SUBSIDIARIES,
        *Petitioner-Appellant,*

        v.

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellee.*

No. 05-72902

Tax Ct. No.
16903-98

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
April 18, 2007—San Francisco, California

Filed August 2, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Stephen S. Trott and William A. Fletcher, Circuit Judges.

Per Curiam Opinion

9273

**COUNSEL**

Glenn A. Smith, Palo Alto, California, attorney for the petitioner-appellant.

Bridget M. Rowan, Department of Justice, Washington, D.C., for the respondent-appellee.

**OPINION**

PER CURIAM:

This dispute concerns when the taxpayer may deduct on its federal return payment of its California state franchise tax. The appellant taxpayer is the Charles Schwab Corporation and its subsidiaries, Schwab Holdings, Inc. and Charles Schwab & Co., Inc. (referred to collectively as "Schwab"). Schwab's California income has grown greatly since it began doing business in the state in April 1987. It would like to deduct its franchise tax payments earlier than the Tax Court ruled it could.

Schwab uses the accrual method of accounting and thus may deduct expenses on its federal tax return for the year in which they accrue. *See* I.R.C. § 461(a). Pursuant to California law in effect at all times material to this litigation, Schwab's state franchise tax liability accrued on the last day of the year in which Schwab earned the income forming the basis for the tax assessment (December 31 of the "income" or "measuring" year). *See Epoch Food Serv., Inc. v. Comm'r*, 72 T.C. 1051, 1054 (1979). Federal law, however, provides that a taxpayer's accrual date for federal tax purposes may be no earlier than it would have been under state law as it existed at the end of 1960. *See* I.R.C. § 461(d)(1). Under pre-1961 California law, the franchise tax did not accrue until the first day of the year following the income year (January 1 of the "taxable" year). *See Cent. Inv. Corp. v. Comm'r*, 9 T.C. 128 (1947), *aff'd* 167 F.2d 1000 (9th Cir. 1948). We therefore affirm.

**Background and Analysis**

Most businesses operating in California, including Schwab, are required to pay a yearly franchise tax the state levies "for the privilege of exercising its corporate franchise[ ]" within the state. Cal. Rev. & Tax. Code § 23151(a); *see also Cent. Inv. Corp.*, 9 T.C. at 131. During the years at issue in this

appeal, California calculated a corporation's franchise tax liability based upon the corporation's income from the preceding year — the so-called "income" year. Cal. Rev. & Tax. Code § 23151.1(a); *Charles Schwab Corp. v. Comm'r*, 122 T.C. 191, 203 (2004) ("*Schwab II*"). Hence, the more money the business earns in a given year, the higher its tax liability in the following year.

Schwab provides discount securities brokerage and related services throughout the United States. It began doing business in California on April 1, 1987, and has been very successful, increasing its California income each year. From the inception of its business in California, Schwab reported its California state taxes, including the franchise tax, on a calendar year basis. For all but the first year of its operations it reported its federal taxes on a calendar year basis, as well. Schwab changed its federal reporting period to a calendar year beginning April 1, 1988. As a result, it had two federal reporting periods in 1988: March 31, 1987 to March 31, 1988, and April 1 to December 31, 1988.

In a previous case, the Tax Court held that Schwab's franchise tax liability based on its 1988 income accrued on December 31, 1988, rather than on January 1, 1989, and therefore could be deducted on Schwab's 1988 federal return. *See Charles Schwab Corp. v. Comm'r*, 107 T.C. 282, 301 (1996) ("*Schwab I*"). The court explained that California's franchise tax regime imposed special rules on corporations during their first two years of operation. Those rules, which caused a corporation's franchise tax liability to accrue on December 31 of the income year, had been in place since before 1961. As a result, the court concluded that I.R.C. § 461(d)(1) was inapplicable because there had been no acceleration of Schwab's accrual date. *Id.* at 298-300. In this appeal, Schwab contends that a December 31 accrual date should continue to apply for 1989 through 1992. The Commissioner responds that, for years at issue here, I.R.C.

§ 461(d)(1) requires that Schwab's franchise tax liability not accrue until the following January 1.

**[1]** Section 461(d)(1) of the Internal Revenue Code "was enacted in 1960, to proscribe the acceleration of state and local tax deductions due to state or local legislation enacted after 1960." *Schwab II*, 122 T.C. at 199. The section nullifies state efforts to move up the accrual date of the franchise tax. It provides:

> to the extent that the time for accruing taxes is earlier than it would be but for any action of any taxing jurisdiction taken after December 31, 1960, . . . such taxes shall be treated as accruing at the time they would have accrued but for such action by such taxing jurisdiction.

I.R.C. § 461(d)(1).

California amended its franchise tax in 1972. Under pre-1972 law, a corporation that stopped doing business did not pay any franchise tax on the income earned during its final year of operation. *See* Cal. Rev. & Tax. Code § 23332 (1960). By contrast, under post-1972 law, such a corporation would be taxed on "its net income for the taxable year during which the corporation ceased doing business." *See* Cal. Rev. & Tax. Code § 23151.1(d). The purpose of this change was to crack down on corporations that avoided their franchise tax obligations by dissolving immediately after engaging in a profitable transaction.

**[2]** One effect of the 1972 changes was to shift the time when the franchise tax accrued, at least for corporations that had been in business for two years or more. Before 1972, the franchise tax obligation of such corporations did not accrue until the first day of the taxable year. The reason is that, even though the tax was calculated based on the income of the preceding year (the income year), "all of the events . . . that

establish the fact of liability" did not occur until the corporation did business during the taxable year. Treas. Reg. 1.461-1(a)(2) (discussing when an accrual taxpayer incurs liability). If the corporation ceased to operate before the start of the taxable year, it would owe no tax on the prior year's income. The Tax Court, in a decision affirmed by our Circuit, expressly adopted this interpretation of California franchise tax accruals under pre-1972 law. *See Cent. Inv. Corp.*, 9 T.C. at 133 ("[W]e are unable to see how any liability can arise for a tax imposed on the privilege of doing business for a year not yet commenced . . . . If no business operations were carried on in the taxable year the tax would not be imposed.").

**[3]** After 1972, a corporation could no longer avoid paying the franchise tax on income earned during its final year of operation. Consequently, all events necessary to establish liability occurred prior to the start of the taxable year, and the tax accrued on December 31 of the income year. As the Tax Court recognized, "[T]he effect of the 1972 California amendment pertaining to dissolving corporations was to change the accrual date for the taxable year's tax based on the preceding year's net income from January 1 of the taxable year to December 31 of the preceding year." *Epoch Food Serv.*, 72 T.C. at 1054. We agree with the Tax Court that "such an advancement of the accrual date is squarely controlled by section 461(d)(1) which operates as a limitation on the taxpayer's right to otherwise accrue and deduct a tax." *Id.*

In earlier litigation between Schwab and the Commissioner, the Tax Court allowed Schwab to accrue and deduct its 1987 and 1988 franchise tax obligations in the income rather than the taxable years, because Schwab's first year was a "short" year, *i.e.*, less than twelve months. Where a business' first year is a short year, special California rules apply to the accrual dates of its first and second years' franchise taxes. *See Schwab I*, 107 T.C. at 298; Cal. Rev. & Tax. Code § 23222. Accordingly, in *Schwab I*, the Tax Court held that § 461(d)(1)

did not apply to the accrual dates of Schwab's first two years of franchise tax payments. *Id.* at 300-01.

On March 31, 1988, when Schwab changed its federal reporting period from a fiscal to a calendar year, it created a "short" federal reporting period beginning on April 1, 1988. *See Schwab II*, 122 T.C. at 205. This change, combined with the fact that Schwab could no longer claim the benefit of California's special rules, created what the Tax Court termed an "anomalous" result: Schwab could not take any federal deduction on its 1989 return. *Id.* Because Schwab had deducted its 1988 franchise tax liability on its 1988 federal return, and because § 461(d)(1) applied to Schwab's liability beginning in 1989, the Tax Court in *Schwab II* found that Schwab's next available deduction would accrue on January 1, 1990, representing its 1989 franchise tax obligation. *Id.*

The Commissioner, however, moved for reconsideration of *Schwab II*. The Commissioner conceded that Schwab should be allowed to deduct on its 1989 federal tax return the state franchise tax payment based upon its 1988 income. *Charles Schwab Corp. V. Comm'r*, 123 T.C. at 307 ("*Schwab III*"). The Tax Court accepted the Commissioner's concession, despite the fact that Schwab already had been permitted a deduction for its state franchise tax payment, based upon its 1988 income, on its 1988 federal return. The Tax Court explained that, under pre-1972 law, Schwab's franchise tax obligation for both its second and third years of operation was based upon its second year income. *Id.* at 310-11.

**[4]** The critical Tax Court holding for purposes of this appeal is that, because of § 461(d)(1), Schwab must deduct on its 1989 federal return its franchise tax liability based upon its 1988 income rather than its 1989 income. The Tax Court's holding in *Schwab I* that § 461(d)(1) did not affect Schwab's franchise tax accruals and deductions in 1987 and 1988 rested on special rules that applied only during Schwab's first two years of operation. The Tax Court properly concluded that,

for the years at issue here, § 461(d)(1) required Schwab to determine the timing of its franchise tax accruals pursuant to pre-1961 law. As a result, Schwab's liability accrued on January 1 of the taxable year rather than December 31 of the preceding income year, meaning Schwab was entitled to deduct on its 1989-1992 federal tax returns its franchise tax obligations based upon its 1988-1991 income.

**[5]** The Tax Court early on held that the 1972 change to California franchise tax law triggered application of § 461(d)(1). *Epoch Food Serv.*, 72 T.C. at 1054. That holding rested on the Tax Court's earlier holding in *Central Investment Corp.*, which this court affirmed. *See* 9 T.C. at 133 (under the pre-1961 version of California law, franchise tax liability accrued on the first day of the taxable year). Schwab contends that the Commissioner's concession regarding its 1989 deduction negates the applicability of § 461(d)(1) for later years. This position is not tenable. The Commissioner's concession was related to Schwab's change to reporting on a calendar year basis beginning April 1, 1988. It was limited to that year. Nothing in the Tax Court decision alters the fact that § 461(d)(1) applies to Schwab's deductions after that change, when Schwab could no longer claim the benefit of special rules applicable to short business and reporting years. The Tax Court correctly applied its own precedent and § 461(d)(1) in determining that Schwab's franchise tax liability for the second half of 1988 and all subsequent years accrued January 1 of the taxable year, and not December 31 of the income year.

The judgment of the Tax Court is AFFIRMED.